STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, SS.                          CIVIL ACTION
                                        DOCKET NO. RE-17-009

MICHAEL DUBE,

        Plaintiff,
    v.                                  ORDER
THOMAS DUBE,

        Defendant.

Plaintiff initiated this litigation by filing a complaint asking the Court to issue a temporary and permanent injunction restraining the defendant, plaintiff's brother, from (1) maintaining a gate across what he alleges to be a common road, (2) maintaining rocks on the common road, denying plaintiff access to his property, and (3) interfering with the plaintiff's use and enjoyment of his property. The defendant answered and counterclaimed with a quiet title/declaratory judgment action, and by alleging trespass, slander of title, tortious conduct, assault, and infliction of emotional distress.[1]

The Court held an evidentiary hearing on the request for a temporary injunction (TRO),[2] and issued its decision on April 13, 2018. The controversy concerned access to Michael Dube's real estate in Monson, Maine. Thomas Dube owns an adjoining parcel to the south, and the western boundary of both parcels is the former Doughty Hill Road (DHR). Michael had used this former road to access his property until Thomas installed a gate and stacked boulders to restrict Michael's access. In its Order, which will be discussed in greater detail below, the Court found that Michael did not have an express easement granting him the right to use the DHR, did not have any rights derivative of a subdivision located to the west of the former road because his parcel was not part of that subdivision, had no prescriptive right to an easement, had no easement by necessity, and did not have a right,

---

[1] At trial, defendant dismissed all counterclaims without prejudice.

[2] This was contained in a complaint in which plaintiff asked for injunctive relief. It did not contain other causes of action.

PISCATAQUIS JUD CTR
FEB 10 '20 AM11:56

common with the public, to use DHR, because it had been discontinued under circumstances in which the public did not retain a right of use or access.

With the underlying complaint for a permanent injunction and the counterclaims still pending, the defendant filed a "motion for judgment" asking the Court to enter judgment on the plaintiff's complaint. The Court denied the motion, but recognized that according to M.R. Civ. P. 65(b)(2), admissible evidence from the TRO hearing can be admitted at trial on the merits,[3] and evidence from that hearing was admitted at the trial of the complaint.

Trial on the complaint and was finished and post-trial submissions were filed by October 20, 2019. During the trial, evidence supplementing what was presented at the TRO hearing was admitted, most notably historical information about the purchase of the Dube lots, and the pattern of usage thereafter. As described in the Order of April 12, 2018, prior to the Dubes purchasing the lots in question, Thomas and two other individuals purchased from Walter Lamont a parcel to the west of DHR, which formed the eastern boundary of the parcel. Prior to these conveyances, Lamont had owned the larger parcel comprising property that was being subdivided as well the Dube lots. The subdivision consisted of five lots and those that bordered DHR are depicted in the subdivision plan as having an eastern boundary defined by pins that indicate the western side of the DHR right-of-way, which appears to lie slightly to the west of what is now the traveled portion of DHR.[4] The purchasers of the subdivision lots were granted, by deed, the right to use DHR for all purposes.

After this purchase was complete and the subdivision approved, Thomas and Patricia Dube

---

[3] Here, there are no "merits" that need to be addressed in deciding plaintiff's claim apart from resolving the permanent injunction issue. In the absence of an objection or motion addressing this issue, this Court is not deciding whether an injunction can issue in a vacuum when there are no additional causes of action expressed in a complaint that form the underlying basis for the granting of an injunction. Additionally, it is important to resolve the issue of Michael's access via DHR.

[4] The relevant deed, Def. Ex. #44 defines this boundary as "Beginning at a point on the west side of the Old Greenville Road . . . ." The Old Greenville Road is also known as the DHR.

purchased the 11.9 acres involved in this litigation from Walter Lamont in 2006. Def. Ex. K. Three days later, they conveyed 6.4 of those acres to Michael Dube. At trial it was learned that both Michael and Thomas put up the funds for the purchase of the 11.9 acres and the sale was constructed as a two-step process by which the brothers divided the larger parcel. Both lots were bounded on the west by the DHR. The deed for the sale of the 11.9 acres to Thomas and Patricia, Def. Ex. #47, indicates that the western boundary starts "at an iron pin in the easterly sideline of Doughty Hill Road as shown on a final subdivision plan" and then "by and along the easterly sideline of said road." There was no granting of any right to use DHR contained in the deed. Michael's deed describes his western line as starting at "an iron pin set in the easterly sideline of the Doughty Hill Road as shown on a final subdivision plan" and then "by and along the easterly sideline of said road." The subdivision plan referred to in the deeds clearly depicts Michael's western boundary as being defined by a pin at his southwestern corner with the line continuing to the north defined by the eastern side of DHR, which is controlled by the width of the right-of-way. The western (subdivision) side of DHR is depicted as controlled by a series of 6 pins, which, indirectly at least, control Michael's western line.

The next relevant transaction is Lamont's conveyance to Thomas and Patricia of his remaining interest in any property in the area. This deed, Def. Ex. # 48, includes Lamont's interest in DHR as well as a .98-acre parcel to the south of the Michael and Thomas parcels and the subdivision. This parcel also borders DHR and is on the same side of DHR as the Michael and Thomas parcels. In order to travel down DHR to reach Michael's lot one would first have to proceed by the .98-acre parcel, passed what appears to be a lot owned by a third party named Keenan, and then proceed by Thomas's lot.

It is clear that Michael has no ownership interest in DHR because his lot's western boundary is the eastern side of the DHR right-of-way. It is equally clear that he does not have an express easement giving him the right to use DHR. At trial, he testified that he had planned on building on

the DHR side of his property as opposed to the Rt. 15 side, and that Thomas was aware of his plan. Although there were deed restrictions prohibiting driveways and structures within 125' of the westerly lot line (DHR), Michael insisted that Thomas was aware he was flagging a location for a septic system in that location and told him the deed restriction meant nothing. For several years Michael accessed his lot via DHR, and used it freely without objection from Thomas, who frequently saw him accessing his lot via DHR. He cleared land and thinned trees on that end of his lot. He also testified that if he had known he could not use DHR he would not have purchased the lot. This evidence does not change the result here, however, because Plaintiff did not allege fraud, estoppel, or any other cause of action that could cause this evidence to be particularly beneficial to his cause.

At trial, additional evidence was not offered that was relevant to other possible theories that could have supported his position that he had a right to access his lot through DHR, so the Court's findings in its order denying the temporary injunction apply here. Thomas has no rights derivative of subdivision ownership because his lot is not a part of the subdivision. He has no prescriptive or implied rights because he purchased his parcel relatively recently and there is no evidence of prior use of DHR for access to the lot prior to his purchase. Easement by necessity does not apply because he has access to his lot from Rt. 15, and even has installed an entrance there. Finally, the Court persists in its finding that at the time DHR was discontinued prior to 1975, the public, including Michael, retained no rights in its continued use. Because Michael has no right, either through ownership or easement, to use DHR to access his lot, the permanent injunction is Denied.

The Entry Is: Permanent injunction Denied.

Dated: February 5, 2020

_____
WILLIAM ANDERSON
JUSTICE, SUPERIOR COURT